18-1347 Slavin v. Garrison Property and Casualty. Counsel? May it please the court, Nelson Wanaka arguing on behalf of plaintiff appellant Patrick Slavin. The district court instructed the jury that under Colorado law an insurance company that unreasonably delays or denies payment of a covered benefit is subject to certain statutory penalties to be imposed by the court. Capitalizing on this instruction, at the end of its closing argument defendant appellee Garrison Property and Casualty Insurance Company said that the entire trial in which a great number of witnesses spoke at length about the benefits owed and the reasonableness of the insurance company's conduct was not in fact about those benefits but was about the penalties that Patrick Slavin hoped to obtain. The instruction was error. First, your instructions are reversed. You're not complaining? Was there an objection to the statement by counsel at the time it was made? There was not an objection to the statement of counsel. There were numerous objections to the instruction. Okay, so we're focusing on instruction. I didn't think you were challenging improper closing argument. Yes, but in analyzing the effect of a jury instruction, whether it tainted the verdict, it's appropriate to look at opening statements, the evidence, and closing argument. That was an opening statement? This was closing. Okay. It's appropriate to look at closing as well. So first of all, the instruction is not a correct statement of the law. A month or two months actually earlier before the trial, the Colorado Supreme Court announced two unanimous decisions that said that was the Casper decision and the rooftop restoration decision. In addition to that, the instruction given is not in conformity at all with the pattern jury instruction for statutory bad-faith claims, which is CGI-CIV 25 colon 4. If you look at the pattern instruction, there are two elements to a statutory bad-faith claim. The first is, did the defendant insurance company delay or denial without a reasonable basis? The pattern jury instructions include no mention of any penalties or remedies, is what they really are, that are imposed by the court after the jury's verdict. And there's very compelling reasons that the pattern instruction doesn't mention penalties. The first is that, as I mentioned, they're not penalties at all under Colorado law. The second and ascertainment of the penalty or imposition of the penalty is not a function of the jury in rendering its verdict. It is a function of the court in drafting the judgment after the verdict is rendered. Well, counsel, can I just stop you there and ask you, isn't the problem, I guess you haven't identified this, but the jury will take that into account when they're setting damages? Isn't that a concern and the jury was not doing that here? Well, I don't think the concern only goes to damages. I think the concern might be that they don't think he should get penalties at all and find against him on a statutory bad-faith claim. So the fear is not just, oh, we'll reduce the damages, but we don't want him to get penalties. Or what, why are we even talking about that? Well, just maybe you can just tell me what the jury took from that instruction under your theory. What did they do? What was their thought process? I don't know what the jury's actual thought process was. I think this instruction and the way it was used by Garrison could only have been for an improper purpose, which is to suggest that this case is about unnamed statutory penalties that Patrick Slavin wants to get. And I think juries, who knows what goes on in that room? I certainly don't know, but... Well, what were they deciding? They were deciding whether a payment was unreasonably delayed or denied for purposes of just the brick facade. Okay. And how would the penalty affect that decision? Just the concern that we don't want penalties to be imposed, whatever they are. If this case is all about statutory penalties, which there was no testimony about statutory penalties, then we'll find against the plaintiff so that he can't recover those penalties for whatever reason. To me, it's no different than trebling damages, which might not necessarily be a reduction. It might just be a finding of no liability by the jury. I just did a quick search of your opening brief in this case. I don't see any argument that the instruction was wrong because it referred to it as a penalty. Can you direct me to where you made that argument in your opening brief? Because that was the main thrust of what you started with, was that the instruction was wrong because it spoke of penalties and the Colorado Supreme Court said it's not a penalty. Sir, well, when we made the ... At the charging conference, we raised four cases, four district court cases that had found ... So there's a case by Judge Brimmer, there's a case by Judge Sackett. You're not answering my question. Do you argue in your opening brief that the instruction was wrong because it referred to this as a penalty and it's not a penalty? We do not. That is in response to the answer brief's assertion that this is a correct statement of law, is where that was raised. Well, don't you have to, in your opening brief, explain why it was an incorrect statement of law? Well, and we do for the three cases. I mean, Casper and Ruth ... You do not make the argument that it's improper because it was ... That it was improper instruction because it's not a penalty. In the opening brief, no, but I think in responding to an answer brief's assertion that it is a correct statement of law, it's appropriate in a reply to raise two cases that are directly on point. But regardless, I think the three cases we did talk about and tried to address with the district court were the Peden, Seidman, Toy, and Casaretto cases, which are similar holdings, which is that the courts in those cases did not instruct the jury, refused to instruct the jury on the penalties because they have no probative value to the jury's determination. In addition to that ... Let me ask you, I suspect that the reason the judge gave that instruction, included that in instruction, was the jury's going to be wondering what the courts are we here for then? And isn't it appropriate for the judge to anticipate that concern and say, you know, your result will result in a statutory penalty, which you're not going to assess it yourself, that's for the court to do? What do you think the jury's going to think, sitting through a trial and not reaching any decision on how much money trains his hands? I think the jury, like in every other statutory bad faith case, thinks it's deciding whether a benefit was delayed or denied without a reasonable basis, consistent with the pattern jury instruction. And they wouldn't ask, why are we doing that? I think that happens in all sorts of cases. I mean, as I mentioned in the opening brief or in the reply brief, it happens in criminal cases all the time. A criminal jury doesn't know the sentence that's going to be imposed. In bifurcated trials, you may have a breach of contract claim under an insurance policy that's bifurcated from a statutory bad faith and common law bad faith claim and the jury doesn't know the effect of its finding on breach of contract. I think a reasonable review of the trial record doesn't reveal any confusion as to what was going on in this case, deciding whether there was a benefit that was unreasonably delayed or denied. And I don't think the jury had any confusion as to why it was there. And this is an important issue that arises all the time in statutory bad faith claims. Just like the Peden, Seidman, Toy, and Casareto cases, this is coming up more and more, which is referring to the penalties is not there to provide context. I don't think it was used to explain, oh, we're deciding this to see whether penalties are imposed or not. It's included in instructions tendered by insurance companies and then argued that that's why we're here, to talk about penalties, in the hope that either the damages are reduced or that there's a finding of no liability. If the court, does the court have any further questions on the instructional issue? We'll ask if we have questions. OK. I'd like to move on to the issue of windows. So as the court is aware, windows were one of two categories of damages awarded by the appraisal panel. This appraisal happened after the original complaint was filed, which is not unusual at all. Both plaintiffs and defendants often request appraisal after litigation has been filed. That's usually because insurance policies contain a time for suit provision, or a lawsuit has to be brought within two years of the date of loss, even though it may not be resolved. So contractual appraisal is a method of ascertaining and finalizing the amount of the loss. So that happened in this case. Plaintiff invoked that right at the suggestion of Magistrate Judge Schaefer. And under the policy, Garrison was obliged to participate, and did participate. It selected its appraiser, and both of those appraisers, Slavin's and Garrison's, identified $12,800 in additional window damage after the complaint was filed. I think the context of the exclusion of the window damages in this case is extremely important. It was not, they were not excluded in a motion for summary judgment. No party filed a motion in Lemonade to exclude evidence of window damage. It arose in the context of plaintiff's motion to strike the defendant's bad faith expert. No one asked that window damage be excluded. Well, why would you ask that it be excluded if there's no allegation in the complaint regarding the windows? No factual allegation. Five years earlier. Are windows mentioned in the complaint? Windows are not mentioned in the amended complaint. But the appraisal had not occurred. We didn't have the claim file. No discovery had occurred. No depositions. And then after the appraisal that Garrison participated in, window damage was awarded. So if windows now appear to be an issue, isn't the proper approach to move to amend your complaint to include windows? I don't reinforce it. Or is it the defendant's responsibility to say, oh gee, they brought up windows. Let's make sure that's not covered. So we'll file a motion to exclude windows. There was no confusion about windows being a part of this case. I went back and reviewed the entire record in preparing for this oral argument. There is, before the litigation, there's one letter from USAA referring to the windows in reference to a payment. Three of its estimates contain line items for windows. The appraisal award, post-filing of the complaint, contains windows. There are two issues, though. One is windows as a matter of breach of contract, and windows as a predicate for violation of the statute. I mean, there's no question that you got recovery for some windows. The question is whether there was any alleged misconduct by the insurer in being too slow to respond with respect to windows or something like that. And there are no allegations about that. Am I correct in the complaint? There are no allegations, but there are allegations, not only with respect to the breach of contract claim, but with respect to the common law bad faith claim and the statutory bad faith claim that there was an insurance contract that obligated Garrison to pay for the restoration of all the damage to the home. The exact same allegation that the district court found supported a breach of contract claim for the windows, which is paragraph 92 at appellant appendix page 71, if my memory is correctly. That exact same allegation appears in the common law breach of contract claim. It appears in the statutory breach of contract claim at paragraphs 81, or excuse me, 79 and 81, and paragraphs 86 and 88. And that's on appellant's appendix page 70. And they're the exact same thing. And so for the court to say that, well, you've alleged window damage for purposes of breach of contract, but not for purposes of statutory bad faith, is just incorrect. And this happens, again, all the time. The complaint does not define the evidence. I don't think rule 15 requires a litigant to amend the complaint to add every factual allegation discovered from subsequent events or in discovery. That's what the final pretrial order is for. And this was in the final pretrial order. Windows were addressed in 10 briefs over a five-year period. 10. Three orders from the district court. The jury instructions jointly submitted by the parties. The proposed verdict form included it. And the trial briefs talked about the windows. And a year after the court found that windows were part of the breach of contract claim, it said it wasn't for purposes of statutory bad faith claim. So I'd like to reserve 30 seconds, unless the court has a question for me. Thank you. Good morning, Your Honors. May it please the court. When he filed this lawsuit, Mr. Slavin claimed Garrison acted unreasonably when it rejected his demand to buy 50,000 custom-made bricks, enough to re-brick his entire house two and a half times when he only needed 1,000 of those bricks. The operative complaint makes that theory clear. During litigation, Mr. Slavin demanded appraisal and then moved to vacate the appraisal award when he was dissatisfied with the result. After the district court refused to vacate the appraisal award, appellant sought to reframe his case and focus solely on pre-litigation conduct and avoid the consequences of the appraisal he demanded. An appellant was successful in convincing the district court to focus on pre-litigation conduct. The exclusion of evidence at appellant's request carried through the trial. And the court did not allow evidence of the appraisal process or payments made after the appraisal beyond the party's stipulations in the pretrial order. Now that that strategy proved unsuccessful as well, appellant claims error for decisions the district court made that are the result of his own pretrial arguments. But the district court's evidentiary rulings are the natural and expected consequences of appellant's pretrial maneuvering and his trial strategy. Further, the district court correctly instructed the jury on Colorado law. And to the extent the challenged instruction was improper, that instruction and that error, if it was one, is harmless because, in fact, the jury didn't even reach the question of whether Garrison acted unreasonably because they answered no to the first question of Garrison did not delay or deny a covered benefit. Now I will address these in a different order than appellant, if the court will allow, because I want to take the issues chronologically as they were presented to the district court and addressed at that time, starting with the windows and the exclusion of evidence related to the windows. The first issue for this court is the standard of review for that issue. Appellant seeks an abuse of discretion for this evidentiary issue. But the fact of the matter is this court may find that there is an intentional waiver based on appellant's conduct and his conduct as a whole. And I'll go through the context of how that decision came about and why this court may find intentional waiver. And if not an intentional waiver, it should be reviewed solely for plain error because there was no offer of proof, as stated is required in the Phillips v. Hillcrest Medical Center case from this court. The fact is we do not know what the evidence at trial would have been on the windows because there is no offer of proof. More than that, it is wrong to claim, as appellant did in reply, that the court essentially issued a decision sua sponte because both parties not only briefed issues related to whether windows should be part of the case before that evidentiary decision was made, the court held oral argument, a 43-minute argument, in January of 2018. Appendix page 2273 is the minute order for that. But appellant did not include the transcript of that hearing in the appendix. Thus, this court does not have in front of it the arguments made by appellant related to the windows, and it does not have an offer of proof to know what the evidence would have been at trial. Thus, if not a clear waiver, then at most, the court should review solely for plain error, which is nearly an insurmountable burden in civil cases. The context of that decision related to windows demonstrates why a waiver may have occurred, and certainly there was no plain error. As a starting point, there is nothing in the claims process indicating an actual dispute related to windows. Appellant raised a question about the windows. That question was answered. He said, that addresses my concerns. The only issue left is the bricks. The court can see that in supplemental appendix pages 174 and 186. More importantly, then, appellant got a lawyer because of the brick issue. Before the lawsuit was filed, that lawyer sent a letter raising questions and pointing out that the bricks were, quote, the sole issue in dispute, end quote. That's appendix page 2180. And that appears in what document did you say? That's a letter? That is a letter from the attorney before the lawsuit was filed, appendix page 2180. Then, of course, there's nothing in the complaint about windows. There's nothing in the amended complaint. The word doesn't appear. Well, counsel, can I just stop you there and get you to respond to opposing counsel's argument that all you did was talk about windows? There could be no surprise in this case because windows were discussed throughout the case. Well, the fact that windows were involved in the claims process, but there was no dispute about them is the problem. And the fact that there might have been windows, as appellant pointed out, didn't come up until the appraisal process. And so the only conduct related to windows in terms of what was actually in the case was did you pay the right amount of the appraisal award, which went to the breach of contract claim that was then withdrawn. OK, so help me understand when you say there's no dispute about them. There was no dispute about the windows during the claims process. So if we're focused on pre-litigation conduct, as appellant requested and the court ruled we would do, there was nothing about a dispute, nothing that would indicate there was any problem with the windows. Windows don't come up until the appraisal award. That's the first time they're injected into the case. And in fact, appellant then filed a motion to file a second amended complaint that included the word windows 35 times to add that to the case, but then withdrew the motion and did not proceed on that amended complaint, instead proceeding on the prior operative complaint that doesn't mention windows. So the arguments that Garrison made to the trial court were windows are not part of this case, first of all. And the district court said, not quite. They're part of the breach of contract case. And because there's disputed facts on breach of contract, that part goes forward. The court never said they were part of the bad faith case. So then when the breach of contract case was withdrawn, evidence about appraisal became irrelevant. The court said, we're not going there. This is all pre-litigation conduct. Garrison again pointed out, well, wait a minute then. If this is all pre-litigation conduct, windows aren't relevant to that. And the district court agreed and said, you're right. There's nothing to do with windows back in this time frame. That is how the context of where we got to. What happened is, appellant got past summary judgment by claiming we didn't pay the appraisal award and by claiming Garrison acted deceitfully and unreasonably related to the bricks. After that, appellant withdrew the breach of contract claim because, as appellant argued, the appraisal process  The payments afterward were too complicated. There was a dispute. Garrison claimed they overpaid the claim. Mr. Slavin claimed he was underpaid. That was going to be what would happen if we talked about the appraisal process. That was all withdrawn. An appellant proceeded without a breach of contract claim and said, let's focus solely on pre-litigation conduct. But the result of doing so was that windows were not part of the dispute pre-appraisal. So they were not part of the dispute pre-litigation. Now, to avoid the consequence of that decision, appellant misreads the district court's order on summary judgment. But the critical distinction is the difference between what it takes to provide notice of a contract claim, which is simply, you failed to pay me what I'm owed, and notice of an unreasonable delay denial claim, pointing out conduct that was unreasonable. And the complaint only talks about conduct related to the windows. As the attorney's letter said during the claims process, the only dispute is the bricks, nothing about windows. Now, the thing is, the court agreed with what appellant asked for, which was to limit the case to pre-litigation conduct. But in doing so, the court then recognized windows were not part of that dispute. Thus, appellant waived his claimed error regarding exclusion of evidence for the windows because it was based on appellant withdrawing his own contract claim and then arguing that evidence should be limited to pre-litigation conduct. And even if not fully waived, it certainly was not plain error for the court to reach that decision, that it would exclude evidence related to windows based on those facts in this case, how that issue came up in this case. The second issue that appellant raised on appeal, and I'll address briefly because he did not address it in oral argument, is the appraisal letter itself. And I just want to point out again, this is a classic example of invited error because appellant asked this evidence be excluded from the trial court, and it was, and then sought to introduce the evidence he had asked to have excluded. And the context starts with Supplemental Appendix, page 168, line 24, in which Garrison intended to demonstrate it had paid $24,000 in change for the bricks before the lawsuit was filed. In response, appellant argued, no, you didn't actually pay the $24,000. Now, what Garrison did at trial was say, here's the pre-litigation conduct, evidence of paying $24,000, compared it solely to this party stipulation about the covered benefit. That was not a violation of the Motion to Eliminate Order, as appellant argues in reply. Garrison did not violate the order. It focused solely on evidence of pre-litigation and compared it to a party stipulation about what was actually ultimately owed. So the attack was to say he didn't really pay the $24,000. And that is what appellant did with the adjuster, Mr. Reinert. And he did it by saying that included additional information, the 24 didn't cover other issues, the checks don't add up, things like that. And I'll point the court to Appendix pages 28, 28 and following, and Appendix pages 31, 29 and following, because those are where Slavin's own counsel went through in detail on their own examination of Mr. Reinert the adjuster to try to prove you didn't really pay the $24,000 you're claiming you did. It was only when that was unsuccessful, apparently, that then appellant claimed, well, with Mr. Bart, we're going to get into post-appraisal payments and try to prove there were payments made later to discredit what happened beforehand. A direct violation of the Motion to Eliminate that was actually solicited by appellant on a page 3181. And in fact, Garrison objected. In that testimony being allowed over Garrison's objection, then, of course, on redirect, Garrison then cleared up to say, no, those payments were due to stale checks. But the court then didn't allow that evidence in that letter to come in because it was too confusing. The same reason appellant argued for in his Motion to Eliminate, that it shouldn't be allowed in the first place as well. That is a classic example of invited error. Appellant should not be heard to challenge the exclusion of evidence that he demanded and convinced the court to exclude. Counsel, could I get you to move to the jury instruction issue? I know you want. Yes, thank you, Your Honor. But you only have three minutes, so. Thank you, Your Honor. The first issue for the jury instructions is that the jury did not reach the question of reasonableness because they found the covered benefit was not delayed or denied. Thus, this court should follow what happened in the Semke case. That drives the outcome here to find that even if there was an error, it was harmless based on the evidence in this case. Because the jury found the benefit. Do you concede there was error? I do not. But I argue that the court doesn't necessarily have to go there. Because if there was any error, it was harmless. And let me explain why there's no error. The structure of the law is correct. Now, as Your Honor pointed out, the issue about whether it's a penalty or damages wasn't raised until the reply brief. It wasn't raised on appeal here or at the district court. But more importantly, when we're talking about a jury, this is semantics between whether it's a statutory penalty or statutory damages. That has legal significance in terms of a statute of limitations. It doesn't have legal significance to a jury. So it is still correct to present this to the jury. And then let me explain why. In the criminal context, we tell a jury that you are going to decide guilt or innocence and that a judge might decide a sentence. We don't tell them what the range of sentences will be or anything. But just to know, here's your role. And there's more that happens so they understand the context. Here, the jury was told Slavin claimed Garrison violated Colorado law. They were told an unreasonable delay or denial  It was proper to further allow the jury the limited context that if the jury finds Garrison violated Colorado law, Garrison would be subject to statutory penalties imposed by the court. The concerns with providing that information to a jury that are raised in the case decided by appellant do not apply here. One, they weren't given a calculation of its double benefits plus attorney's fees or anything like that for them to be able to take a damage number and reduce it. They also weren't considering damages at all. When being asked two simple questions, was there a delay or denial of benefit and was that delay or denial unreasonable, it was certainly appropriate for them to understand, because this is a statutory violation, the significance is if they violated the law, the court will then take the next step and address what penalties are required. That is a proper context for a jury to understand the significance of what they are doing in this case. And in any case, with this type of instruction or this type of claim, not to know the details, how much is the penalty, should we reduce our award, but just simply that their finding, their reason for being here, has meaning. It does have significance. Because that is what they're doing here and they should be allowed to know that limited context as they were told here. Ultimately then, though, but even if the court found that instruction was not correct, there's still a harmless error here where the jury didn't even reach the question of reasonableness because they stopped at question one. In sum, the district court's decision that appellant now challenges are the result of his own pretrial maneuvering and trial strategy. Mr. Slavin had his day in court. His chance to convince a jury that Garrison acted unreasonably focused on the pre-litigation conduct that he requested. And the jury rejected his claims. The jury's verdict should not be disturbed and this court should affirm the trial court's judgment. Thank you. Very quickly, I'd like to address the notion that there was no dispute about the windows before the appraisal. That is a classic jury question. I think it's inappropriate for a court to decide on a motion to strike a defense expert. Insurance companies have a duty to investigate and ascertain the benefits payable and whether that was reasonable or not with respect to the windows is part of the claim. It's inappropriate to just say, wasn't a part of the case in the context of a motion to strike an expert, therefore, no windows at all case. Well, let me ask you, your time's expired, but let me ask you one question. Had you alleged any impropriety? Had you alleged any dispute regarding the windows? We allege that they failed to pay the full extent of the cost to repair all of the damages to his home and it was developed in discovery. Thank you, your honors. Case is submitted. Counsel are excused. We'll turn to our next case.